Good morning. Good morning, Your Honors. May it please the Court, I am Debbie Parrish, and I'm representing the appellant, International Rehabilitative Sciences, also known as RS Medical. I have with me here this morning Jake Ewart. I'd like to reserve one minute for rebuttal. All right. Watch your time, and I'll try to help you as well. Thank you, Your Honors. This case is about what protection a company is entitled to when Medicare makes varying coverage determinations about a device based on the same evidence. And Medicare regulations and the Social Security Act state that if a supplier cannot reasonably foresee that specific claims will be denied, then Medicare will make payment. In this case, RS Medical provided a device to Medicare beneficiaries. And when it presented claims for that device to Medicare, the vast majority of claims were paid. And when there were periodic denials, most of those denials were reversed through the appeals process. The question before this Court is whether the specific denials in this case were clearly foreseeable to RS Medical. And I think that RS Medical's position and its entitlement to that protection under the limitation of liability can be appreciated by looking at a single document in the record, the spreadsheet at Exhibit Number 236. And that is a payment variation spreadsheet. And each line represents the claims for a particular Medicare beneficiary. And if you drop down to about line 16 and you put yourself in the shoes of that Medicare beneficiary, you go in and you say to your doctor, my knee is hurting me. And your doctor says, well, I reviewed the peer-reviewed literature, and there's this device which has been cleared by the FDA as safe and effective for the treatment of osteoarthritis and for symptoms and other pain. But Medicare has not yet announced its coverage policy. How bad your knee has to be for Medicare to want to pay for this device for you? And so your doctor... I'm sure, as you realize, there are a lot of factors on the other side, including all the regulations and the so forth. But my question is this. In this kind of proceeding where there is evidence on both sides, what is our standard of review? There has to be substantial evidence, Your Honor, that these denials before you were clearly foreseeable. If substantial evidence, the Secretary's decision that the denial is foreseeable is supported by substantial evidence, then the Secretary's entitled to an affirmance. Otherwise, it should be reversed. Yes. If the evidence shows clearly that RS Medical should have foreseen that these specific claims were denied, then yes, it would be for the Secretary. So what effect does it have at all that we had this previous case in 2002 where there was substantial evidence to support the Appeals Council denial of coverage for this knee device? In that case, Your Honor, the question was, was there evidence? Did the Secretary provide substantial, was there substantial evidence? Did she adequately explain why she denied it? But explaining why a claim might ultimately be denied two years later does not address the issue of foreseeability. Why not in terms of the whole issue that was on the table back then is essentially the same issue in many respects? No, it wouldn't be, Your Honor, because this Court looked at, did the Secretary adequately explain why it denied those claims later on in 2008? But the claims pending before you, Your Honor, in 2006, so how could a company know in 2006 that in 2008, you would find that the Secretary had adequately explained why those claims were denied? Well, had anything changed, I mean, in terms of this foreseeability? I mean, your argument is that, your argument has to be that substantial evidence doesn't support this administrative decision. No, that substantial evidence doesn't support the fact that RS Medical clearly knew these claims would be denied back in 2006. Correct. So at the time, as I stated, when RS Medical was presenting these claims, the vast majority of them were paid. So if you look at that example in line 16, you went in to your doctor, they prescribed it, and the first four months, so the first claim goes in, and so you sign that form saying, if Medicare doesn't pay for it, I will pay for it. That's what an advanced beneficiary notice is. And then the first claim goes in, and it gets paid, and you go, who's up? I'm not going to have to pay for it. Medicare is going to pay for it. And then the second month it's paid, and the third month it's paid, and the fourth month it's paid. What about in terms of, because as Judge Tsushima points out, it is deferential review. Correct. So what about the fact that advanced beneficiary notices were sent out? Why doesn't that demonstrate that RS Medical knew, or at least could reasonably be expected to know that these claims would be denied? Because according to the claims processing manual, those notices don't get sent out unless there's doubt that there will be coverage in the first place. That is correct, Your Honor. But also in the Medicare claims processing manual, Chapter 30, Section 30.1.1, it states if you give an advanced beneficiary notice and there is subsequent payment, that ABN cannot be used as evidence or knowledge that other claims will be denied. Because that expectation of non-coverage has been belied by subsequent payment. Well, then did RS Medical continue to send out these advanced beneficiary notices? No, it did not, Your Honor. So in fact, all the Medicare beneficiaries did not get ABNs. The question was how bad, you know, they look at your need, how bad does it have to be for Medicare to want to pay for it? And in fact, in 2006, RS Medical stopped sending out ABNs to anybody because its experience was the vast majority of claims are being paid. When did you stop sending out the advanced beneficiary notices? About mid-2006, Your Honor. So RS Medical, when those claims were paid, had no, in my example, if you were that beneficiary, neither you nor RS Medical, after having four months of payment, are going to expect that any claims are going to be denied. However, when the fifth month claim goes in, it is denied. It's denied on the basis that there aren't sufficient studies that show this device works, or there's not sufficient evidence to show this device has been accepted by the medical community. Well, Your Honor, you wouldn't expect that it would be denied based on studies because you just had four months of claims denied, I mean paid, Your Honor, on those exact same studies. And so RS Medical appealed those denials thinking they must be erroneous. And in my example, on the sixth month when your claim went in, it was paid by Medicare, and the seventh month wasn't paid, but the eighth month was paid. So in effect, you're saying this kind of hopscotch result can't point to clearly foreseeable. That's exactly right, Your Honor. In the sea of paid claims, you can't identify why one specific claim would be paid and why one would not. And so therefore, it would not have been foreseeable. There was nothing that was distinguishable about the paid claims from the claims that were not paid. So in my example, the Secretary has argued, while RS Medical should have known that the studies did not show it was effective, how would RS Medical have ever reached that conclusion? Hundreds of doctors were prescribed this device. It was being paid by insurance companies, workers' compensation plans, but more importantly, the vast majority of claims were being paid by Medicare itself, which necessarily meant that there had been a determination that the studies did show it was effective. I thought that as late as December of 2006, there were numerous denials specifically citing to the fact that literature and research fails to demonstrate the effectiveness, and that was the basis for the denials. Some claims were denied, and claims were denied on various bases. Some claims were denied saying that there were not sufficient studies, but even claims that were denied on that basis routinely were overturned through the appeal process, Your Honor. And in fact, when I say a large majority of claims were paid, less than 1% of the claims were denied on the basis that this device was experimental and investigational. So yes, denials did occur, but they were routinely being overturned. The last issue that the Secretary raises is that, well, RS Medical should have known this device was not covered based upon the Well, Your Honor, those were claims that were denied when this device was billed under miscellaneous code. And almost every device and service in our country, when it's first offered to Medicare beneficiaries, is billed under miscellaneous code. You use that code to acquire the evidence to show substantial adoption. At the end of 2005, Do you have record support for the proposition that the denials were overturned on appeal? Yes, Your Honor. If you look at the decisions that issued in 2006, there were seven decisions issued. In 2006, there were five fully favorable decisions. Finding this device generally worked and was effective for those beneficiaries. In 2006, there were five fully favorable decisions, and there were two partially favorable decisions. And in 2007, there were 119 final fully favorable decisions that this device generally worked and worked for those Medicare beneficiaries. You may want to say the remaining time. I do have one question. That has to do with the sealing of the record, if you would stay and answer that, because my note says that the entire excerpt of record was filed under seal, but the briefs are not filed under seal, correct? All right. So why is the entire record filed under seal? I believe, Your Honor, because it contains Medicare beneficiaries' specific information. But not the entire record. But there are parts of it that contain specific. That's correct. And so the only concern is individually identifying information related to Medicare beneficiaries. Is that the concern about why it was filed? That is the concern, yes, Your Honor. Okay. Well, just as a caution to everybody, we get these records as a matter of course people try to file the whole thing under seal. It impedes our ability to even write a decision in a case. So it's best not to file the whole record under seal for future reference. Thank you, Your Honor. I may please the Court. I'd like to start by addressing section 411.406D1, which is the provision, the regulation that states as a matter of law that a supplier is considered to have known that services were not covered if the supplier informed the beneficiary that the services were not covered. In this case, for the claims at issue, RS Medical supplied the beneficiary with an advance notice that stated, we expect that Medicare will not pay for the items or services that are described below in each of those claims. So that should, in the case right there, that is a basis for affirming the district court's decision, which affirmed the agency's decision that RS Medical knew or should have known that the devices would not be covered. And again, to focus on the standard of review, counsel has slightly misstated it. The standard is whether substantial evidence supports the agency's decision that the beneficiary should have known. And under D1, there is no requirement that they had to clearly know. And we think that under D1, it is clear though, because they issued ABNs for each of the claims at issues that specifically stated that they expected the device would not be covered. Does it matter that these notices stop being sent out in December or in mid 2006, I think the opposing counsel said? Well, first of all, Your Honor, that's factually incorrect. For each of the claims that are at issue here, there was an advanced beneficiary notice that was issued, including one that was issued as late as September of 2006. So it's just factually incorrect to say that they were stopped being issued in mid 2006. But more importantly, and our brief has citations of the particular notices that are at issue for the claims that continue to be at issue in this case. And for each one of those claims, there is a notice. So I don't think that that impacts it. In addition, there are four other district court cases pending that have beneficiary notices that were issued many in the latter half of 2006 and even some in 2007. So we think as a factual matter, that's just incorrect. Next, I wanted to clarify a little bit about the timing of the decisions that are at issue here. There were four appeals counsel's decisions. In two of those, the appeals counsel found that the beneficiary was liable because the notices shifted liability to the beneficiary. So those are no longer at issue in this appeal because in those two cases, the beneficiary has been held liable. So it's irrelevant whether or not RS Medical also knew that the device wouldn't be covered. So for the two remaining decisions that are at issue, and that's the 535 decision and the 416 decision, there are nine beneficiaries with claims that were held to have ineffective advance beneficiary notices. And just to be clear, of those, I believe almost 80% of those were issued, the claims at issue were for the first half of 2006. And so when they're talking about a number of ALJ decisions that happened in August and later of 2006, that's after these claims were, the services were provided for these claims. In addition, the 2007 ALJ decisions that they're relying on, again, those are after the time period in which these services were provided. So they're really not relevant to the question of what RS Medical knew or should have known at the time that it provided these services. And again, just to, you know, they make a lot about the sort of the tide turning and what was happening in terms of coverage at the lowest level of the agency by the contractors, you know, in 2006 and later. And, you know, this court can affirm under 411.406D1 without even addressing that. But if the court does want to address that, I would just like to point out that their statements aren't supported by the record. They rely on four pieces of evidence. One is the charts that counsel said was the most important piece of evidence that are at ER 236 through 44. Those charts are of Bionicare claims, not RS Medical claims. So they're not the claims that are at issue in this case. Next, in their brief, they rely on ER 317 through 36 as claims that were paid in 2006. If you look at those, those are actually claims that were paid under the E1399 code in 2005. And then one claim that was paid in 2006. Just because we are not quite as conversant in the Medicaid. Sorry. The miscellaneous code. That's a miscellaneous code. Yes. So just to point out that their site, they cite that in their brief, those pages of the record as showing the vast majority of the claims were paid. And tell me again where the citation is or where the record site is. Sure. It's in their brief. They cite ER 317 through 36 as establishing that the vast majority of claims were paid in 2006. And actually those are, those are evidence of five claims that Medicare paid, four of which were from 2005 and one of which was from 2006. So again, that doesn't support their broad statement that the vast majority of claims were paid in 2006. They rely heavily on an affidavit that they supported in the, that they provided in the non-adversarial context of the ALJ. And then lastly, they rely on at ER 59 through 235, a number of ALJ decisions, one of which was issued in February of 2006, but the rest of which were issued after August of 2006. And so they're, they're really not relevant for the claims that are still at issue on this appeal, which again, almost 80% of were from the first half of 2006. And so I just wanted to clarify that about the timing of what's going on and the broad statements that they're making about what was happening, you know, even in later years, it's really not relevant to the question before this court. And we think again that there are three independent bases as we laid out in our brief for why this court can affirm the agency's decision on substantial evidence grounds. And if there are no further questions. Here's not. Thank you. Thank you. You used all your time, but I'll give you a minute and rebuttal of course. Thank you. Again, I recommend you to chapter 30, section 30.1.1, which states that if a subsequent claim is paid that negates the secretary exercises extraordinary flexibility in making coverage determinations. And on a claim by claim basis, revisits not only whether device is appropriate for an individual, but whether device works at all. No, no provider can reasonably foresee that a specific claim would be denied. And in this case, the vast majority of claims presented were paid and nothing distinguished the paid claims from the unpaid claims, nothing. And so therefore I believe RS medical is entitled to protection of the limitation of liability act. Your honor. Thank you. Thank you both for your argument this morning, international rehabilitative sciences versus Levitt is submitted.
judges: Tashima, McKeown, Nguyen